824 N.E.2d 239 (2005)
214 Ill.2d 187
291 Ill.Dec. 663
The PEOPLE of the State of Illinois, Appellant,
v.
James JONES, Appellee.
No. 97710.
Supreme Court of Illinois.
February 3, 2005.
*240 Lisa Madigan, Attorney General, Springfield, and Joseph E. Birkett, State's Attorney, Wheaton (Gary Feinerman, Solicitor General, Linda D. Woloshin and Domenica A. Osterberger, Assistant Attorneys General, Chicago, and Lisa Anne Hoffman, Assistant State's Attorney, of counsel), for the People.
G. Joseph Weller, Deputy Defender, and Bruce Kirkham, Assistant Defender, of the Office of the State Appellate Defender, Elgin, for appellee.
Justice GARMAN delivered the opinion of the court:
Defendant was arrested for driving under the influence of alcohol (DUI). Afterward, hospital personnel administered blood and urine tests at the request of the arresting officer, but without defendant's consent. In defendant's DUI proceedings, he moved to suppress the results of the blood and urine tests on the ground the tests were nonconsensual. The circuit court granted defendant's motion and ordered suppression of the test results. The State appealed, and the appellate court affirmed the suppression order. This court granted the State's petition for leave to appeal. The issue before us is whether section 11-501.2 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.2 (West 2002)) grants a statutory right to refuse chemical testing to a DUI arrestee in a situation not involving the death or personal injury of another. We hold it does not and reverse and remand.

BACKGROUND
Defendant James Jones was involved in a car accident on April 3, 2002. The accident did not result in the death or personal injury of another party. When the police officer responding to the accident asked defendant to perform field sobriety tests, defendant complained of pain in his sternum and was transported to Elmhurst Hospital. Defendant stated he would not consent to a blood draw or urine sample. At the hospital, the officer read the warning to motorist document to defendant, informing him of the consequences of refusing to submit to chemical testing. The hospital did not request blood or urine samples for defendant's medical treatment. Although defendant continued to object to *241 the taking of the samples, he said he would not physically resist their collection. Defendant provided a urine sample to the officer, and at the officer's direction, a hospital phlebotomist obtained a blood sample. The samples were then analyzed for alcohol and drug content.
On April 25, 2002, a bill of indictment was issued charging defendant with four counts of aggravated driving while under the influence of alcohol (625 ILCS 5/11-501(a)(4), (a)(5), (a)(6), (c-1)(3) (West 2002)) and one count of aggravated driving while license revoked (625 ILCS 5/6-303(a), (d) (West 2002)). On June 6, 2002, he filed a motion in the circuit court of Du Page County to suppress the results of his blood and urine tests, arguing the test results were inadmissible as evidence against him because his blood and urine were taken without his consent and were not taken in the course of providing him with medical treatment.
On June 26, 2002, the circuit court granted defendant's motion to suppress on the ground that section 11-501.2(c)(2) of the Vehicle Code prohibited the tests. Section 11-501.2(c)(2) provides:
"Notwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both." 625 ILCS 5/11-501.2(c)(2) (West 2002).
In a memorandum opinion, the circuit court reasoned that section 11-501.2(c)(2) clearly implies that "there is an ability to refuse to submit to the testing required under the [Vehicle] Code" and that in DUI arrests not involving the death or personal injury of another, the legislature intended "to give the person [arrested] the ability to refuse testing and not be compelled to do so."
The State filed a motion to reconsider on July 18, 2002, arguing the circuit court erred in finding that the legislature intended to provide a DUI arrestee with the right to refuse blood or urine testing under section 11-501.2(c)(2). The State suggested section 11-501.2(c)(2) merely addresses a distinction between the civil and criminal aspects of the Vehicle Code. Section 11-501.2(c)(2), the State argued, was enacted to ensure that an individual subjected to a nonconsensual blood or urine draw after refusing to comply with an officer's request for the draw in a situation involving the death or personal injury of another would still be subject to summary suspension of driving privileges on the basis of his or her refusal, as provided by section 11-501.1. See 625 ILCS 5/11-501.1 (West 2002). According to the State, even in a situation not involving the death or bodily injury of another, an officer's decision to order chemical testing after a DUI arrestee's refusal to submit would not affect the admissibility of the test results in the arrestee's DUI prosecution. It would, however, violate the section 11-501.1 summary suspension requirements and prevent summary suspension of the arrestee's driving privileges. In an oral ruling, the circuit court rejected this interpretation of section 11-501.2(c)(2) and denied the State's motion to reconsider. The State then filed notice of appeal.
*242 The appellate court affirmed the circuit court's suppression order. 344 Ill.App.3d 684, 689, 279 Ill.Dec. 644, 800 N.E.2d 1227. In interpreting section 11-501.2(c)(2), the appellate court applied the principle of expressio unius est exclusio alterius and concluded that by enumerating specific situations where an alleged impaired driver can be subjected to nonconsensual chemical testing in section 11-501.2(c)(2), the legislature implicitly excluded all other situations. 344 Ill.App.3d at 688-89, 279 Ill.Dec. 644, 800 N.E.2d 1227. Specifically, the appellate court reasoned that because section 11-501.2(c)(2) explicitly authorizes nonconsensual chemical tests in situations involving the death or personal injury of another, it does not authorize them in situations not involving the death or personal injury of another. 344 Ill.App.3d at 688-89, 279 Ill.Dec. 644, 800 N.E.2d 1227. In addition, the appellate court concluded that its interpretation of section 11-501.2(c)(2) was consistent with the legislative history and case law relating to nonconsensual chemical testing in DUI cases. 344 Ill.App.3d at 689, 279 Ill.Dec. 644, 800 N.E.2d 1227. The appellate court explained that because nonconsensual chemical testing based on probable cause of impairment was permissible without further restriction before the legislature enacted section 11-501.2(c)(2) (344 Ill.App.3d at 689, 279 Ill.Dec. 644, 800 N.E.2d 1227 (citing Schmerber v. California, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908, 918 (1966), and People v. Todd, 59 Ill.2d 534, 544, 322 N.E.2d 447 (1975))), and because section 11-501.2(c)(2) specifically authorized nonconsensual chemical testing in two situations where it was already permissible, the legislature must have intended section 11-501.2(c)(2) to prohibit nonconsensual chemical testing in situations other than the two enumerated in the statute. 344 Ill.App.3d at 689, 279 Ill.Dec. 644, 800 N.E.2d 1227.
We granted the State's petition for leave to appeal in this case pursuant to Supreme Court Rule 315 (177 Ill.2d R. 315), and we now reverse the decisions of the appellate and circuit courts.

ANALYSIS
The State challenges both the methodology and result of the appellate court's interpretation of the statute at issue in this case. In addition, the State argues that even if the appellate court was correct in concluding section 11-501.2(c)(2) prohibits nonconsensual chemical testing in situations that do not involve death or personal injury, suppression of evidence is not an appropriate remedy for a violation of that section. We review the statutory interpretation issue de novo. See People v. Donoho, 204 Ill.2d 159, 172, 273 Ill.Dec. 116, 788 N.E.2d 707 (2003). Because we resolve that issue in favor of the State and find there was no violation of the statute, we need not address the State's suppression argument.

I
The primary objective of statutory interpretation is to determine and give effect to the legislature's intent. People v. Hanna, 207 Ill.2d 486, 497, 279 Ill.Dec. 618, 800 N.E.2d 1201 (2003). This inquiry properly begins by examining the language of the statute at issue. People v. Phelps, 211 Ill.2d 1, 15, 284 Ill.Dec. 268, 809 N.E.2d 1214 (2004). The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous. People v. Ellis, 199 Ill.2d 28, 39, 262 Ill.Dec. 383, 765 N.E.2d 991 (2002). Where the legislature's intent is not clear from the statute's plain language, the court may examine the legislative history. People v. Whitney, 188 Ill.2d 91, 97-98, 241 Ill.Dec. 770, 720 N.E.2d 225 (1999).
*243 Section 11-501.2(c)(2) clearly allows nonconsensual chemical testing where a police officer has probable cause to believe that a vehicle driven by an individual under the influence has caused the death or personal injury of another. 625 ILCS 5/11-501.2(c)(2) (West 2002) ("[I]f a law enforcement officer has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds * * * has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine"); see also People v. Ruppel, 303 Ill.App.3d 885, 892, 237 Ill.Dec. 21, 708 N.E.2d 824 (1999) (holding that section 11-501.2(c)(2) authorizes nonconsensual chemical testing in situations involving the death or personal injury of another). The statute is silent on situations not involving death or personal injury.
The State suggests nonconsensual chemical testing is permissible in all situations based on section 11-501.2(a)'s provision that evidence of chemical test results "shall be admissible" when the tests have been conducted in accordance with the procedures set forth in the statute. See 625 ILCS 5/11-501.2(a) (West 2002). Defendant, on the other hand, argues section 11-501.2(c)(2)'s provision that nonconsensual chemical testing is permissible in situations involving the death or personal injury of another "[n]otwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests" recognizes a motorist's right to refuse chemical testing. 625 ILCS 5/11-501.2(c)(2) (West 2002). Section 11-501.2(a), however, merely refers to and incorporates section 11-501.2(c)(2). Further, section 11-501.2(c)(2)'s negative references to "any ability to refuse" chemical testing and "any ability to revoke the implied consent" to chemical tests under the Vehicle Code do not unambiguously establish a statutory right to refuse chemical testing. It is thus unclear, based solely on the plain language of the statute, if section 11-501.2 of the Vehicle Code grants a right to refuse chemical testing to a DUI arrestee in situations not involving the death or personal injury of another. As a result, we turn for guidance to the history of the right to refuse chemical testing under Illinois law.

II
The State and defendant agree on the status of Illinois law regarding nonconsensual chemical testing prior to the enactment of section 11-501.2(c)(2)-specifically, that nonconsensual chemical testing of a DUI arrestee was permissible in all DUI situations, not merely those involving death or personal injury. We concur.
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held the taking of a blood sample without the defendant's consent or a search warrant was a "reasonable" search under the fourth amendment where there was probable cause to believe the defendant was intoxicated, and the delay caused by obtaining a search warrant might have resulted in loss of evidence of the defendant's intoxication, given the natural dissipation of the alcohol in the defendant's blood. See Schmerber, 384 U.S. at 768-72, 86 S.Ct. at 1834-36, 16 L.Ed.2d at 918-20. In examining the reasonableness of the blood test procedure itself, the Court observed blood "tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no *244 risk, trauma, or pain." Schmerber, 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. The Court further noted that the manner in which the procedure was conducted was reasonable, as the defendant's blood was taken "in a hospital environment according to accepted medical practices." Schmerber, 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920.
This court endorsed the United States Supreme Court's holding in Schmerber in People v. Todd, 59 Ill.2d 534, 322 N.E.2d 447 (1975). Todd was a consolidated appeal from three DUI convictions in which the defendants sought interpretation of a provision of the applicable Illinois DUI statute, arguing the statute prohibited the evidentiary use of blood samples obtained without a DUI arrestee's consent. Todd, 59 Ill.2d at 536, 322 N.E.2d 447 (citing Ill.Rev.Stat.1969, ch. 95½, par. 144, and Ill.Rev.Stat.1971, ch. 95½, par. 11-501). This court held the statute did require consent to chemical testing for test results to be admissible as evidence. Todd, 59 Ill.2d at 544, 322 N.E.2d 447. The court noted, however, that the statute gave protection to DUI defendants greater than that required by Schmerber, stating Schmerber made it "clear that a compulsory blood test does not violate any constitutional rights of an individual merely because he objected to such tests." Todd, 59 Ill.2d at 544, 322 N.E.2d 447. In the absence of "a more limiting statutory provision," the court stated, taking a blood sample does not require a DUI arrestee's consent. Todd, 59 Ill.2d at 545, 322 N.E.2d 447.
Todd focused on section 11-501 the Vehicle Code, which, at the time Todd was decided, provided:
"Evidence based upon a chemical analysis of blood, urine, breath or other bodily substance shall not be admitted unless such substance was procured and such analysis made with the consent of the person as provided by this Chapter, whose bodily substance was so analyzed." (Emphasis added.) Ill.Rev.Stat.1975, ch. 95 ½, par. 11-501(c)(3).
The legislature eliminated this consent requirement through Public Act 82-311, effective January 1, 1982. See Ill.Rev.Stat. 1981, ch. 95½, par. 11-501; 625 ILCS Ann. 5/11-501, Historical & Statutory Notes, at 324-25 (Smith-Hurd 2002).
Public Act 82-311 also rewrote section 11-501.1 to provide:
"A person requested to submit to a [blood, breath, or urine] test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in suspension of such person's license to operate a motor vehicle * * *. Following this warning, if a person under arrest refuses upon the request of a law enforcement officer to submit to a test designated by the law enforcement agency * * *, none shall be given * * *." (Emphases added.) Ill.Rev.Stat.1981, ch. 95½, par. 11-501.1(c).
See 625 ILCS Ann. 5/11-501.1, Historical & Statutory Notes, at 386-89 (Smith-Hurd 2002). This right to refuse chemical testing was, in turn, repealed by Public Act 84-272, effective January 1, 1986.[1] See Ill.Rev.Stat.1985, ch. 95½, par. 11-501.1; 625 ILCS Ann. 5/11-501.1, Historical & Statutory Notes, at 388-89 (Smith-Hurd 2002); see also People v. Giere, 192 Ill. *245 App.3d 520, 524-25, 139 Ill.Dec. 548, 548 N.E.2d 1104 (1989) (acknowledging that Public Act 84-272's amendment of section 11-501.1(c) in 1986 abrogated cases requiring consent on the basis of the preamended version of that section).
Finally, Public Act 82-311 added section 11-501.2 to the Vehicle Code, providing for the admissibility of evidence of refusal. This section stated, in part:
"If a person under arrest refuses to submit to a chemical test * * *, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person under the influence of alcohol, or other drugs, or combination of both was driving or in actual physical control of a motor vehicle." Ill.Rev.Stat.1981, ch. 95½, par. 11-501.2(c).
The current version of this provision is codified in section 11-501.2(c)(1) of the Vehicle Code. See 625 ILCS 5/11-501.2(c)(1) (West 2002).
In sum, by 1986, the Vehicle Code clearly did not provide a right to refuse chemical testing. Public Act 82-311 eliminated Illinois' explicit consent requirement in 1982, but it added a right to refuse a police officer's request for chemical testing, qualifying that right by allowing the admission of evidence of refusal in court. Public Act 84-272 then eliminated altogether the right to refuse chemical testing in 1986.
A series of appellate court decisions subsequently confirmed the absence of such a statutory right under Illinois law, holding that the results of nonconsensual chemical tests of DUI arrestees were admissible in court as evidence of intoxication. See, e.g., Village of Algonquin v. Ford, 145 Ill.App.3d 19, 21, 99 Ill.Dec. 148, 495 N.E.2d 595 (1986) ("No consent is necessary to admit a breath-alcohol test into evidence in a DUI case"); People v. Brown, 175 Ill.App.3d 725, 726-27, 125 Ill.Dec. 153, 530 N.E.2d 71 (1988) ("We hold that voluntary consent is not a prerequisite to admissibility of the breathalyzer results"); Giere, 192 Ill.App.3d at 524, 139 Ill.Dec. 548, 548 N.E.2d 1104 ("[T]here is no statutory requirement of consent before blood-alcohol test results may be admitted in a DUI prosecution since that requirement was abolished by the General Assembly effective January 1, 1982"); People v. Franciskovich, 202 Ill.App.3d 693, 696, 147 Ill.Dec. 871, 560 N.E.2d 19 (1990) ("Any lack of consent was no basis to prohibit admission of the defendant's blood-alcohol test results"); People v. Byrd, 215 Ill.App.3d 468, 470-71, 158 Ill.Dec. 876, 574 N.E.2d 1269 (1991) ("[Section 11-501] no longer provides a restriction on compulsory tests of bodily substances"); People v. Ayres, 228 Ill.App.3d 277, 279, 169 Ill.Dec. 427, 591 N.E.2d 931 (1992) ("Voluntary consent is not a prerequisite to the admissibility of breathalyzer results in a DUI prosecution" (emphasis omitted)). These decisions recognized as the law of Illinois that a chemical test does not require consent absent a statutory provision to the contrary. See, e.g., Ford, 145 Ill.App.3d at 21, 99 Ill.Dec. 148, 495 N.E.2d 595; Giere, 192 Ill.App.3d at 524, 139 Ill.Dec. 548, 548 N.E.2d 1104; Byrd, 215 Ill.App.3d at 470, 158 Ill.Dec. 876, 574 N.E.2d 1269; Ayres, 228 Ill.App.3d at 279, 169 Ill.Dec. 427, 591 N.E.2d 931. Thus, before section 11-501.2(c)(2) went into effect in 1995 (625 ILCS 5/11-501.2(c)(2) (West 1994)), the Illinois Vehicle Code clearly did not provide a right to refuse chemical testing, and under Todd, the absence of such a "limiting statutory provision" (Todd, 59 Ill.2d at 545, 322 N.E.2d 447) meant results of nonconsensual chemical tests were admissible in DUI prosecutions.

III
Having established there was no right to refuse chemical testing before section *246 11-501.2(c)(2) became law, we must decide whether section 11-501.2(c)(2) created that right. It is presumed that, in enacting new legislation, the legislature acts with full knowledge of previous judicial decisions addressing the subject matter of that legislation. Fink v. Ryan, 174 Ill.2d 302, 308, 220 Ill.Dec. 369, 673 N.E.2d 281 (1996). Likewise, it is presumed the legislature acts rationally and with full knowledge of all prior legislation. State v. Mikusch, 138 Ill.2d 242, 247-48, 149 Ill.Dec. 704, 562 N.E.2d 168 (1990). In general, a statute will not be construed to change the settled law of the state unless its terms clearly require such a construction. In re May 1991 Will County Grand Jury, 152 Ill.2d 381, 388, 178 Ill.Dec. 406, 604 N.E.2d 929 (1992).
We presume that, when the legislature enacted section 11-501.2(c)(2), it was aware of this court's acceptance in Todd of Schmerber's principle that nonconsensual chemical testing is permissible. In addition, we presume the legislature enacted section 11-501.2(c)(2) with full knowledge of its previous legislation on chemical testing. In Illinois, the settled law regarding chemical testing prior to the enactment of section 11-501.2(c)(2) was that no right to refuse chemical testing existed. As a result, we are unwilling to construe the language of section 11-501.2(c)(2) as creating a right to refuse chemical testing. To do so would require a strained reading of the statutory language and would ignore Illinois' past experience with legislative enactments governing consent to chemical tests. We note the legislature's prior enactments set forth consent requirements in terms far more certain than section 11-501.2(c)(2)'s passing mention of "any ability to refuse" and "any ability to revoke the implied consent." 625 ILCS 5/11-501.2(c)(2) (West 2002). The consent requirement in the repealed version of section 11-501(c)(3) explicitly provided that chemical test results "shall not be admitted" unless obtained "with the consent" of the person tested. Ill.Rev.Stat.1975, ch. 95½, par. 1-501(c)(3). Likewise, the language governing chemical testing in the repealed version of section 11-501.1(c) stated in clear terms that upon refusal to submit to chemical testing, "none shall be given." Ill.Rev.Stat.1981, ch. 95½, par. 11-501.1(c). Section 11-501.2(c)(2) does not contain comparatively clear and specific language, and in its absence, we will not interpret it as altering the settled law of this state.
We find In re May 1991 Will County Grand Jury to be particularly instructive in this case, because there, as here, this court declined to apply the principle of expressio unius est exclusio alterius in construing statutory language that enumerated specific situations in which the statute applied without expressly excluding others. Will County Grand Jury, 152 Ill.2d at 387-88, 178 Ill.Dec. 406, 604 N.E.2d 929. Instead, this court relied on the principle that a statute will not be interpreted to effect a change in settled law unless its terms clearly require such a construction. Will County Grand Jury, 152 Ill.2d at 388, 178 Ill.Dec. 406, 604 N.E.2d 929. In Will County Grand Jury, a grand jury issued a subpoena requiring two men to appear in a lineup and submit head and pubic hair samples. Will County Grand Jury, 152 Ill.2d at 385-86, 178 Ill.Dec. 406, 604 N.E.2d 929. The first issue this court disposed of was whether the relevant statute imposed limitations on the grand jury's power to gather physical evidence through the subpoenaing of witnesses. Will County Grand Jury, 152 Ill.2d at 386, 178 Ill.Dec. 406, 604 N.E.2d 929. The statute provided that the grand jury had a right to subpoena witnesses to testify and provide documents. Will County Grand Jury, 152 Ill.2d at 387, 178 *247 Ill.Dec. 406, 604 N.E.2d 929. The men who were subpoenaed argued that the statute did not give the grand jury the right to subpoena other evidence, such as hair samples and in-person lineup appearances. Will County Grand Jury, 152 Ill.2d at 387, 178 Ill.Dec. 406, 604 N.E.2d 929. In rejecting this interpretation of the statute, this court noted that while, generally, the expression of one thing in a statute excludes all others, "that principle is not a rule of law," but rather "a rule of statutory construction used by courts in arriving at the intention of the legislature." Will County Grand Jury, 152 Ill.2d at 387, 178 Ill.Dec. 406, 604 N.E.2d 929. Based on the settled law of the state, as reflected in case law that existed prior to the enactment of the statute at issue in that case, this court concluded the statute did not exclude the right of the grand jury to demand physical evidence from witnesses. Will County Grand Jury, 152 Ill.2d at 388, 178 Ill.Dec. 406, 604 N.E.2d 929.
For purposes of clarification, our holding in this case does not give law enforcement officers unbridled authority to order and conduct chemical tests. We do not suggest that a DUI arrestee's lack of a right to refuse chemical testing under section 11-501.2(c)(2) permits law enforcement officers to use physical force in obtaining blood, urine, and breath samples. The Vehicle Code already eliminates any advantage a DUI arrestee might hope to gain from refusing chemical testing. Under section 11-501.2(c)(1), if a DUI arrestee refuses to submit to chemical testing, evidence of the refusal is admissible in the arrestee's DUI prosecution. 625 ILCS 5/11-501.2(c)(1) (West 2002); see also People v. Edwards, 241 Ill.App.3d 839, 843, 182 Ill.Dec. 428, 609 N.E.2d 962 (1993) (indicating that a defendant's refusal to submit to blood testing has "some tendency to indicate a consciousness of guilt" and is thus relevant and admissible in a DUI prosecution). In addition, refusal to submit will result in the summary suspension of the arrestee's driving privileges. This penalty is the same as that imposed where tests are conducted and the results indicate a blood-alcohol concentration over the legal limit. See 625 ILCS 5/11-501.1(c) (West 2002).

CONCLUSION
We hold section 11-501.2(c)(2) does not grant a statutory right to refuse chemical testing to a DUI arrestee. This interpretation of section 11-501.2(c)(2) is consistent with well-established principles of statutory interpretation. Thus, while the circumstances surrounding defendant's DUI arrest did not involve death or personal injury, and the chemical tests of defendant's blood and urine were performed over defendant's objection, the results of defendant's chemical tests should not have been suppressed. The circuit court erred in ordering suppression of the test results, and the appellate court erred in affirming that order. Accordingly, the judgments of the appellate court and the circuit court are reversed, and the cause is remanded to the circuit court for trial.
Appellate court judgment reversed; circuit court judgment reversed; cause remanded.
Justice KARMEIER took no part in the consideration or decision of this case.
Justice KILBRIDE, dissenting:
I respectfully dissent from the majority opinion. In my view, the appellate court properly affirmed the circuit court's order granting defendant's motion to suppress.
Section 11-501.2(c)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(c)(2) (West 2002)) is unambiguous. "The primary rule of statutory construction is to ascertain and give effect to the intention of *248 the legislature * * *." People v. Woodard, 175 Ill.2d 435, 443, 222 Ill.Dec. 401, 677 N.E.2d 935 (1997). To determine legislative intent, a court should first look to the plain language of the statute and accord the language its plain and commonly understood meaning. Department of Public Aid ex rel. Davis v. Brewer, 183 Ill.2d 540, 554, 234 Ill.Dec. 223, 702 N.E.2d 563 (1998); Woodard, 175 Ill.2d at 443, 222 Ill.Dec. 401, 677 N.E.2d 935; People v. Phelps, 211 Ill.2d 1, 15, 284 Ill.Dec. 268, 809 N.E.2d 1214 (2004).
The introductory clause of section 11-501.2(c)(2) provides: "[n]otwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests * * *." 625 ILCS 5/11-501.2(c)(2) (West 2002). The plain language of this clause clearly indicates the legislature's recognition of the right to refuse to submit to chemical testing. The remaining clause of section 11-501.2(c)(2) provides:
"[I]f a law enforcement officer has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both." (Emphasis added.) 625 ILCS 5/11-501.2(c)(2) (West 2002).
The plain language of this clause means exactly what it says. Section 11-501.2(c)(2) specifically authorizes nonconsensual chemical testing of a suspected impaired driver only when a law enforcement officer has probable cause to believe the intoxicated driver has caused death or personal injury to another. Thus, the plain language of section 11-501.2(c)(2) mandates nonconsensual chemical testing only under those two specific circumstances.
Even if I accepted the majority's position that the statute is ambiguous (214 Ill.2d at 194-95, 291 Ill.Dec. at 667, 824 N.E.2d at 243), I disagree with the majority's refusal to apply the well-known aid of statutory construction, expressio unius est exclusio alterius, meaning "the expression of one thing is the exclusion of another." Black's Law Dictionary 581 (6th ed.1990). Although expressio unius est exclusio alterius is not a rule of law (214 Ill.2d at 201, 291 Ill.Dec. at 671, 824 N.E.2d at 247), it is, however, an aid of statutory interpretation. Metzger v. DaRosa, 209 Ill.2d 30, 44, 282 Ill.Dec. 148, 805 N.E.2d 1165 (2004). When a statute makes specific references, it is to be inferred that all omissions are understood as exclusions. Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill.2d 429, 442, 170 Ill.Dec. 633, 593 N.E.2d 522 (1992). "This rule of statutory construction is based on logic and common sense. It expresses the learning of common experience that when people say one thing they do not mean something else." Metzger, 209 Ill.2d at 44, 282 Ill.Dec. 148, 805 N.E.2d 1165.
Here, section 11-501(c)(2) explicitly authorizes nonconsensual chemical testing when a suspected impaired driver has caused death or personal injury to another. It does not expressly authorize nonconsensual chemical testing in any other circumstance. Accordingly, under the principle of expressio unius est exclusio alterius, by enumerating the specific circumstances when a suspected impaired driver can be subjected to nonconsensual chemical testing, the legislature implicitly excluded circumstances not involving death or personal injury to another.
*249 Moreover, in applying rules of statutory construction, a statute should be read as a whole and construed so that no word, phrase, or section is rendered meaningless or superfluous. People v. Ellis, 199 Ill.2d 28, 39, 262 Ill.Dec. 383, 765 N.E.2d 991 (2002). As the majority notes, prior to the enactment of section 11-501.2(c)(2), nonconsensual chemical testing of a suspected impaired driver was permissible in all circumstances. 214 Ill.2d at 195, 199, 291 Ill.Dec. at 667, 669, 824 N.E.2d at 243, 245. In order to give the subsequent enactment of section 11-501.2(c)(2) meaning, it must be interpreted as changing the prior law.
Since nonconsensual chemical testing was already permissible before enactment of section 11-501.2(c)(2), the legislature's subsequent enactment of section 11-501.2(c)(2) must be construed to prohibit nonconsensual testing of a suspected driver in situations not involving death or bodily injury. Conversely, the majority's interpretation renders section 11-501.2(c)(2) meaningless surplusage and enactment of the statute pointless.
Additionally, the legislative debates negate the majority's conclusion that section 11-501.2(c)(2) applies when no death or personal injury to another occurs. "Valuable construction aids in interpreting an ambiguous statute are the provision's legislative history and debates, and the purposes and underlying policies." Advincula v. United Blood Services, 176 Ill.2d 1, 19, 223 Ill.Dec. 1, 678 N.E.2d 1009 (1996). On May 20, 1994, during the third reading of House Bill 3094 in the Senate, Senator Raica stated:
"What House Bill 3094 does is provides [sic] that if a police officer has probable cause to believe that a vehicle is being driven by a person who's under the influence and that individual has caused the death or personal injury, the officer can require the person to submit to a drug, breath, or urine test." 88th Ill. Gen. Assem., Senate Proceedings, May 20, 1994, at 110 (statements of Senator Raica).
On June 14, 1994, during the House debate on House Bill 3094, the following exchange occurred:
"Deering: Senate Amendment # 1 as I understand it, requires a driver to submit to a breath or urine test under stated circumstances, what are those circumstances?
Dart: They've killed somebody or they've caused major injury to them.
Deering: So it's not if they get pulled over for suspected DUI?
Dart: Correct, correct. There has to be probable cause that the death of the person was based upon their actions or that the severe injury was.
Deering: Thank you." 88th Ill. Gen. Assem., House Proceedings, June 14, 1994, at 116 (statements of Representatives Deering & Dart).
Thus, the legislative debates show that the legislature did not intend the result obtained by the majority.
Finally, the majority is inconsistent when it asserts "[w]e do not suggest that a DUI arrestee's lack of a right to refuse chemical testing under section 11-501.2(c)(2) permits law enforcement officers to use physical force in obtaining blood, urine, and breath samples." 214 Ill.2d at 201, 291 Ill.Dec. at 671, 824 N.E.2d at 247. Essentially, the majority concludes that a suspected impaired driver does not have the right to refuse chemical testing, yet law enforcement officers do not have the right to compel nonconsensual testing. If law enforcement officers may not employ compulsion, how does the majority suggest law enforcement officers obtain the samples?
*250 In sum, Jones was arrested for driving under the influence and the alleged violation did not result in death or personal injury to another. It was, therefore, statutorily improper for the law enforcement officer to order blood and urine samples to be taken over Jones' objection. For these reasons I would affirm the circuit court and appellate court rulings suppressing the test results. Accordingly, I respectfully dissent.
NOTES
[1] Neither defendant nor the State mentioned the version of section 11-501.1(c) in effect between January 1, 1982, and January 1, 1986 in its briefs. The enactment and repeal of this version of section 11-501.1(c) are relevant to this case because they further clarify that no right of refusal existed in the Vehicle Code at the time section 11-501.2(c)(2) was enacted.