# ILLINOIS OFFICIAL REPORTS

---

*In re Marriage of Mathis*, 2011 IL App (4th) 110301

---

| | |
|---|---|
| Appellate Court Caption | *In re*: the Marriage of KENNETH W. MATHIS, Petitioner-Appellant, and TERRI D. MATHIS, Respondent-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0301 |
| Argued | October 19, 2011 |
| Filed | November 9, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court answered a certified question pursuant to Supreme Court Rule 308 as to the appropriate date for valuation of marital property in a bifurcated dissolution proceeding when a grounds judgment has been entered and there is a lengthy delay between the entry of the grounds judgment and the hearing on ancillary issues by finding that the appropriate date is the date of the trial on the property-distribution matter or some other date as close to the date of that trial as is practicable. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 00-D-719; the Hon. Arnold F. Blockman, Judge, presiding. |
| Judgment | Question answered; cause remanded. |

Counsel on
Appeal

Matthew P. Kuenning and Traci E. Nally (argued), both of Nally, Bauer, Feinen & Mann, P.C., of Champaign, for appellant.

Sarah B. Tinney (argued), of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellee.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justice Pope concurred in the judgment and opinion.
Justice Appleton specially concurred in the judgment, with opinion.

## OPINION

¶ 1   In the dissolution-of-marriage proceedings of petitioner, Kenneth W. Mathis, and respondent, Terri D. Mathis, the Champaign County circuit court certified the following question for interlocutory review pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010):

"In a bifurcated dissolution proceeding, when a grounds judgment has been entered, and when there is a lengthy delay between the date of the entry of the grounds judgment and the hearing on ancillary issues, is the appropriate date for valuation of marital property the date of dissolution or a date as close as practicable to the date of trial of the ancillary issues?"

We granted petitioner's application for leave to appeal and, as a matter of first impression, interpret the application of section 503(f) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/503(f) (West 2000)) to bifurcated dissolution proceedings in which the ancillary issues are determined after the dissolution judgment on grounds. Our interpretation of section 503(f) demonstrates the appropriate valuation date for the situation presented is the date of trial on the property-distribution matter or some other date as close to the date of that trial as is practicable and we remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3   The parties married in August 1977 and had three children, Corey (born in September 1984), Jamie (born in May 1986), and Aaron (born in August 1989). In November 2000, petitioner filed his petition for dissolution of the parties' marriage. At a March 26, 2001, hearing, the trial court awarded the parties a judgment of dissolution, reserved ruling on the ancillary issues, and noted a written judgment order on grounds would be entered. In October 2002, petitioner filed a motion for the entry of the dissolution judgment on grounds only, which the court denied in December 2002. In September 2003, petitioner filed a second

motion for the entry of a dissolution judgment on grounds only.

¶ 4     On April 6, 2004, the trial court commenced the hearing on ancillary issues. The next day, the court continued the hearing until September 2004. On August 24, 2004, the court entered the dissolution judgment as to grounds only. The September 2004 hearing for the ancillary issues was continued.

¶ 5     In November 2005, petitioner filed a motion *in limine* to establish the valuation date of the marital property. After a December 2005 hearing on petitioner's motion, the trial court took the matter under advisement and ordered the parties to submit briefs on the issue. In February 2006, the court set the valuation date as January 1, 2006, citing section 503(f) of the Dissolution Act and the facts of the case. The hearing on the ancillary issues did not resume after that order, and, in fact, the docket sheets contain no entries between August 30, 2007, and February 3, 2010.

¶ 6     In May 2010, the trial court set the continued hearing on the ancillary issues for November 2010. In October 2010, respondent filed a motion to change the valuation date, and petitioner filed a motion to reconsider the valuation date. After a December 3, 2010, hearing, the court set a valuation date of December 31, 2010. On December 14, 2010, petitioner filed a motion for a Rule 308 finding. On February 11, 2011, the court granted petitioner's request and noted a Rule 308 order would be entered. On March 24, 2011, the court entered the written Rule 308 order, certifying the previously stated question. On April 6, 2011, petitioner filed his timely application for leave to appeal pursuant to Rule 308, and this court allowed the appeal on May 11, 2011. Thus, we have jurisdiction of this cause under Rule 308.

¶ 7                                    II. ANALYSIS

¶ 8     The question certified for review requires us to interpret section 503(f)'s applicability to bifurcated dissolution proceedings where the grounds judgment has been entered before a hearing on the ancillary issues. Despite the fact section 503(f) became effective on January 1, 1993 (Pub. Act 87-881, § 1 (eff. Jan. 1, 1993) (1992 Ill. Laws 1019, 1022-23)), no reviewing court has specifically addressed section 503(f)'s application to such proceedings. See, *e.g.*, *In re Marriage of Awan*, 388 Ill. App. 3d 204, 209, 902 N.E.2d 777, 783-84 (2009) (finding the date of dissolution is the proper valuation date for property in a bifurcated proceeding without mentioning section 503(f)); see also *In re Marriage of Asher-Goettler*, 378 Ill. App. 3d 1023, 1033, 883 N.E.2d 564, 572 (2008) (citing section 503(f) in finding the trial court erred by using the separation date in determining the value of a mortgage in a nonbifurcated hearing); *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1064-65, 838 N.E.2d 310, 315-16 (2005) (citing section 503(f) in finding the trial court did not commit error in valuing a 401k account in a nonbifurcated hearing). Petitioner asserts section 503(f) does not apply to bifurcated dissolution proceedings, and thus that provision did not change the existing case law, which held the date of valuation was the date of the dissolution. See, *e.g.*, *In re Marriage of Rossi*, 113 Ill. App. 3d 55, 60, 446 N.E.2d 1198, 1202 (1983). Respondent disagrees and asserts the plain language of section 503(f) indicates the valuation date is a date as close as practicable to the date of trial on the ancillary issues. Respondent

also argues a valuation date near trial is warranted based on petitioner's actions during these proceedings. However, we agree with petitioner the latter argument is irrelevant to the certified question at issue in this Rule 308 appeal.

¶ 9 The fundamental rule of statutory construction requires courts to ascertain and give effect to the legislature's intent. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180, 950 N.E.2d 1136, 1146 (2011). The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. In interpreting a statutory provision, courts evaluate the statute as a whole, "with each provision construed in connection with every other section." *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. When the statutory language is clear and unambiguous, a court must give effect to the statute's plain meaning without resorting to extrinsic statutory-construction aids. *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. Thus, a court may examine legislative history only when the legislature's intent is not clear from the statute's plain language. *People v. Jones*, 214 Ill. 2d 187, 193, 824 N.E.2d 239, 242 (2005). Accordingly, petitioner's first several arguments regarding the history of section 503(f) and the existing case law at the time of its enactment are irrelevant unless this court finds an ambiguity exists. See *Jones*, 214 Ill. 2d at 195-99, 824 N.E.2d at 243-46 (finding the statute's language was unclear before addressing the history of the statute and the presumptions related to the enactment of new legislation). "A statute is ambiguous if it is capable of more than one reasonable interpretation." *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 397, 818 N.E.2d 1204, 1209 (2004).

¶ 10 Section 503 of the Dissolution Act addresses the disposition of property and its subsection (f) states the following:

"In a proceeding for dissolution of marriage or declaration of invalidity of marriage or in a proceeding for disposition of property following dissolution of marriage by a court that lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court, in determining the value of the marital and non-marital property for purposes of dividing the property, shall value the property as of the date of trial or some other date as close to the date of trial as is practicable." 750 ILCS 5/503(f) (West 2000).

¶ 11 Petitioner first argues section 503(f) is patently ambiguous, meaning the ambiguity arises out of the words themselves (*Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 279, 592 N.E.2d 1031, 1035 (1992) (quoting Black's Law Dictionary 102 (3d ed. 1933)). Specifically, petitioner argues "the date of trial" language is ambiguous because in bifurcated proceedings more than one trial takes place. However, in interpreting a statute one must read the provision as a whole and not in isolation. *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. Section 503 does not distinguish dissolution-of-marriage proceedings that are addressed all in one trial from those addressed in multiple trials. Moreover, section 503 addresses only the disposition of property and has nothing to do with the grounds for a dissolution. Thus, the only reasonable interpretation of section 503(f) is that it is referring to the trial in which the property distribution is to be decided. Accordingly, we find section 503(f) is not patently ambiguous.

¶ 12    Petitioner further asserts that, if section 503(f) is not patently ambiguous, then it produces a latent ambiguity. A latent ambiguity arises when the words of the legislation are clear but, due to external circumstances, the literal application of those words would create an absurdity the legislative body could not possibly have intended. *Dusthimer v. Board of Trustees of the University of Illinois*, 368 Ill. App. 3d 159, 168, 857 N.E.2d 343, 353 (2006). This court has stated the following cautions regarding latent ambiguities:

> "To maintain the separation of the legislative and judicial branches and avoid compromising our fidelity to the text, we should be extremely reluctant to second-guess the clear language of legislation in the name of preventing a latent ambiguity. [Citation.] Whenever a court disregards the clear language of legislation in the name of 'avoiding absurdity,' it runs the risk of implementing its own notions of optimal public policy and effectively becoming a legislature. Interpreting legislation to mean something other than what it clearly says is a measure of last resort, to avoid 'great injustice' or an outcome that could be characterized, without exaggeration, as an absurdity and an utter frustration of the apparent purpose of the legislation." *Dusthimer*, 368 Ill. App. 3d at 168-69, 857 N.E.2d at 353.

¶ 13    Petitioner argues the application of section 503(f) to bifurcated proceedings, such as the one in this case, produces the absurd result of providing a windfall to the former spouse by allowing him or her to capture the fruits of the other party's postdissolution efforts. He further contends such a result is contrary to public policy embodied in other subsections of section 503 that provide only value created during the marriage is marital property.

¶ 14    Section 503(b)(1) of the Dissolution Act (750 ILCS 5/503(b)(1) (West 2000)) provides the presumption of marital property does not apply to property acquired by a spouse after the date of the dissolution. Section 503(c) of the Dissolution Act (750 ILCS 5/503(c) (West 2000)) then addresses the treatment of commingled marital and nonmarital property. Section 503(d)(1) of the Dissolution Act (750 ILCS 5/503(d)(1) (West 2000)) also requires the trial court to consider, *inter alia*, the following in distributing the parties' property: "the contribution of each party to the acquisition, preservation, or increase or decrease in the value of the marital or non-marital property, including the contribution of a spouse as a homemaker or to the family unit." The aforementioned provisions provide a framework for the trial court to distribute the parties' property in a manner that takes into account appreciation of marital property due to postdissolution efforts. If the party expending the effort can show his or her contributions increased the value of the marital asset, then the windfall alleged by petitioner would not occur.

¶ 15    Moreover, petitioner argues the Fifth District's *In re Marriage of Cutler*, 334 Ill. App. 3d 731, 778 N.E.2d 762 (2002), demonstrates that changes in the value of marital property based on efforts after the dissolution of marriage should not be treated as accruing to the marriage. We disagree. There, the Fifth District concluded, in a nonbifurcated proceeding, the valuation of a business determined by the capitalized returns method was an error. *Cutler*, 334 Ill. App. 3d at 737, 778 N.E.2d at 768. As an aside, we note the *Cutler* court failed to recognize section 503(f) and erroneously stated the valuation date was the dissolution date. *Cutler*, 334 Ill. App. 3d at 737, 778 N.E.2d at 767. Citing *In re Marriage of Frazier*, 125 Ill. App. 3d 473, 476-77, 466 N.E.2d 290, 293 (1984), the court noted the application of the

capitalized returns method was an improper way to value a business as a marital asset because the calculation necessarily included as marital property labor which would be performed subsequent to the dissolution, resulting in an excessive valuation. *Cutler*, 334 Ill. App. 3d at 737, 778 N.E.2d at 767-68. That method involved reducing the party's future earnings to present cash value. See *Frazier*, 125 Ill. App. 3d at 476, 466 N.E.2d at 293. Assets acquired after the dissolution judgment are not marital property (750 ILCS 5/503(b) (West 2000)), and thus the consideration of postdissolution earnings would be improper. However, at issue with section 503(f) are postdissolution changes in the value of property that was acquired before the dissolution, not afterward. As noted, any efforts by one of the parties to increase the value of an asset is considered under section 503(d)(1).

¶ 16 Additionally, petitioner argues a new spouse could also have an interest in any postdissolution increases in value. However, any claim by a party's new spouse to property involved in a prior marriage would be properly addressed in a future dissolution under the provisions of section 503. Further, we disagree with petitioner a valuation date after the dissolution judgment creates "perverse incentives." If a former spouse declines to maintain marital property, that fact will be taken into consideration under section 503(d)(1), just like any efforts that increase the value would be taken into consideration.

¶ 17 Petitioner also questions why postdissolution changes in values should be shared when it was the titleholder that decided not to sell the property and put the money elsewhere. However, petitioner overlooks section 501.1(a)(1) of the Dissolution Act (750 ILCS 5/501.1(a)(1) (West 2000)), which provides for a dissolution action stay until a final judgment is entered that restrains the parties from, *inter alia*, transferring or spending any property without the consent of the other party or a court order, except for the usual course of business, the necessities of life, and expenses related to the proceedings. Thus, only in limited circumstances can a party to a dissolution judgment act unilaterally with respect to property until the final judgment is entered. Ergo, petitioner's argument carries little weight.

¶ 18 We note using any other date not connected to the trial on the issue of property distribution is more likely to produce an anomalous result. If one uses an earlier date and the assets have decreased in value, then the trial court is distributing assets that no longer exist, creating an unenforceable order. See *In re Marriage of Schinelli*, 406 Ill. App. 3d 991, 1002, 942 N.E.2d 682, 691 (2011) (finding a dissolution judgment was unenforceable as to the distribution of an investment account where the account had lost more than $100,000 in value since the judgment's entry). Moreover, if the property appreciates in value without any effort by either party, it creates a windfall to the lucky party that receives that property in the distribution. We recognize property values can change between the trial and the actual date of judgment. However, any such changes would likely be smaller than another date that was farther removed from the judgment.

¶ 19 Accordingly, we decline to second-guess the legislature and find section 503(f) does not produce a latent ambiguity. We do not overlook the fact our interpretation of section 503(f) disregards long existing case law. However, we point out the Dissolution Act has been amended numerous times since the decision in *Rossi*, including the addition of sections 501.1 (providing the restraint on property), 503(c) (addressing commingling of marital and nonmarital property), and 503(f) (addressing valuation date). Moreover, in the current

economic climate, assets are just as likely to decrease in value as to increase, and courts cannot distribute assets that no longer exist.

¶ 20                                                    III. CONCLUSION

¶ 21        For the reasons stated, we answer the question of the Champaign County circuit court, finding the appropriate valuation date for the situation presented is the date of trial on the property-distribution matter or some other date as close to the date of that trial as is practicable, and remand for further proceedings.

¶ 22        Question answered; cause remanded.

¶ 23        JUSTICE APPLETON, specially concurring:

¶ 24        While I concur with the reasoning and result expressed by the majority, I write separately to highlight some concerns with the possible effect of the answer we announce today to the certified question.

¶ 25        Where, as apparently in this case, the parties have substantial assets and business interests, the answer to the certified question may serve to create a new level of gamesmanship in the resolution of a divorce proceeding. Given that the proper evaluation of diverse business assets is a very time-consuming process and the discovery needed to test those valuations consumes even more time, the value of the marital estate can, and likely will, change (sometimes dramatically) while this process plays out. Of course, that will require a whole new round of valuations.

¶ 26        Many judges will refuse to enter a "grounds only" judgment of dissolution for this reason. However, there are some cases where the entry of a "grounds only" judgment is necessary due to the personal circumstances of the parties. Even in a case without such special circumstances, the trial court must have the ability to determine a final valuation date to force resolution of the proceedings, as we have held here, recognizing "as close to the trial date as practicable" is a flexible concept the trial court can use as the specifics of the case before it requires.